*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

WILLIAM COLEMAN,             :
                                    :

          Plaintiff,          :       Civ. No. 15-7314 (FLW) (LHG)
                                      :

       v.                       :
                                      :

CITY OF LONG BRANCH, et al.,    :         **OPINION**
                                      :

          Defendants.     :

_____ :

**WOLFSON, United States District Judge:**

In this action, *pro se* Plaintiff William Coleman ("Plaintiff" or "Coleman"), a prisoner incarcerated at South Woods State Prison, asserts various civil rights claims, pursuant to 42 U.S.C. § 1983, as well common-law tort claims, arising out of a motor vehicle stop, his arrest, and a subsequent search of a motel room in which he was staying. (Complaint ("Compl."), ECF No. 1). Presently before the Court is Defendants the City of Long Branch (the "City"), Lt. Grippaldi, Det. Brian A. Garrett ("Det. Garrett"), Det. Ross H. Zotti ("Det. Zotti"), Det. Brown, Det. House, Officer Robert R. Bataille ("Ofc. Bataille"), Officer Patrick D. Joyce ("Ofc. Joyce"), Officer Vecchino ("Ofc. Vecchino"), and Officer Rodriguez's ("Ofc. Rodriguez") (collectively, "Defendants") motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. (Mot., ECF No. 24). Defendants' motion is unopposed. For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.       BACKGROUND

## A.  Underlying Facts[1]

At approximately 11:50 p.m. on the night of August 14, 2014, Coleman was traveling as a passenger in a vehicle operated by non-party Jillian Ribeiro.  (ECF No. 1 ¶ 19; Defendants' Statement of Undisputed Material Facts ("Defs.' Statement,"), ECF No. 24-2, ¶¶ 1–5).  As the vehicle passed through Long Branch, New Jersey, Ofc. Bataille observed Ribeiro fail to stop at a traffic light, and he further observed "the passenger duck down to attempt to conceal his identity and the driver look back at his patrol car as she passed."[2]  (ECF No. 24-2 ¶ 2).  As a result, Ofc. Bataille illuminated the lights on his patrol car to make a motor vehicle stop.  (*Id.* ¶ 3; *see also* ECF No. 1 ¶ 22–23).  In response, Ribeiro turned into the Ocean Court Motel and brought the vehicle to a stop.  (*Id.*; ECF No. 24-2 ¶ 5).  Subsequently, Ribeiro and Coleman exited the vehicle, and Ofc. Bataille ordered them to return.  (ECF No. 24-2 ¶ 5).  After initially returning to the vehicle and opening the passenger door, Coleman closed it and began to walk away.  (*Id.* ¶ 6).  Once again, Ofc. Bataille ordered Coleman to stop, and, when Coleman did not, Ofc. Bataille informed Coleman that he was under arrest.  (*Id.*).

After being advised that he was under arrest, Coleman broke into a sprint, with Ofc. Bataille in pursuit.  (*Id.* ¶ 7).  As Coleman fled, Ofc. Bataille observed him "throw objects from his pockets onto the ground."  (*Id.*).  By this time, Ofc. Joyce had been summoned and pulled his

---

[1]  As required by Local Civil Rule 56.1, Defendants' motion includes a Statement of Undisputed Material Facts ("Defs.' Statement").  (ECF No. 24-2).  Because Plaintiff neither opposed Defendants' motion nor responded to Defs.' Statement, the facts recited therein are deemed undisputed for the purposes of this Opinion.  *See* L. Civ. R. 56.1(a).

[2]  In his Complaint, Coleman asserts that, "[a]t all times Ms. Ribeiro was abiding by all traffic laws . . . and operating the vehicle in a safe and professional manner."  (ECF No. 1 ¶ 21).  Nonetheless, at the summary judgment stage, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006); *see also NAACP v. City of Phila.*, 834 F.3d 435, 440 (3d Cir. 2016).  Because Coleman has not responded to Defs.' Statement, the facts therein are deemed undisputed, including the statement that Ofc. Bataille observed the vehicle fail to stop at a traffic light.  (*See supra*, note 1).

vehicle into Coleman's path of flight. (*Id.* ¶ 8). Coleman came into contact with Ofc. Joyce's police vehicle, "placing his hands on the hood, spinning around [and] then running in a different direction." (*Id.*). Ofc. Joyce then exited his vehicle and tackled Coleman. (*Id.* ¶ 9). Thereafter, Ofc. Vecchino "assisted Officer Joyce in subduing Plaintiff." (*Id.*).

Despite admonitions to stop resisting, Coleman tried to pull his hands away from the officers. (*Id.* ¶ 10). Nonetheless, the officers eventually secured Coleman's hands behind his back and placed him in handcuffs. (*Id.*). Ofc. Bataille then "picked up the items [that] Plaintiff was throwing out of his pockets," consisting of a cellular telephone, a battery for a cellular telephone, and a driver's license. (*Id.* ¶ 11). In the same area, Ofc. Rodriguez found "two plastic bags suspected to be cocaine and a pipe used to smoke cocaine." (*Id.* ¶ 12).

Following his arrest, Ofc. Joyce "processed" Coleman and found "three large plastic bags suspected to be cocaine, nine wax envelopes suspected to be heroin, cash and a key to [a] motel room." (*Id.* ¶ 15). Several of the officers then proceeded to the subject motel, where the motel's night manager confirmed that Ribeiro had rented a room, in which she and Coleman were staying. (*Id*. ¶ 16). The night manager then gave the officers consent to search the room. (*Id.* ¶ 17). During the course of the motel room search, Det. Garrett found "drug paraphernalia including plastic bags, [a] scale, heroin packing, razor blades and a notebook ledger." (*Id.* ¶ 18). Det. Zotti, who was also present at the time of the motel room search, "stated that distribution of narcotics was evident and that cocaine was also recovered." (*Id.* ¶ 19).

Following his arrest, Coleman was charged with possession of a controlled dangerous substance ("CDS"), possession of CDS with intent to distribute, possession of CDS with intent to distribute while within 500 feet of a public park, and resisting arrest. (*Id.* ¶ 21).

### B.  Procedural History

On October 5, 2015, Coleman, proceeding *pro se*, filed the Complaint, alleging that Defendants' actions during the course of the motor vehicle stop, arrest, and search violated his constitutional rights under 42 U.S.C. § 1983. (ECF No. 1). Coleman also asserted various tort law claims. (*Id.*). More specifically, in the Complaint, Coleman alleges that, "[a]s soon as [Ofc. Bataille] exited his vehicle [in in the motel parking lot,] he upholstered [sic] his firearm and pointed it directly at [Coleman] telling him not to move." (*Id.* ¶ 24). Coleman avers that he feared for his life based on his "history of assaults from various members of the Long Branch Police Department," and thus, panicked and began to run. (*Id.*). According to the Complaint, as Coleman took flight, Ofc. Joyce struck Coleman with his patrol vehicle, with the resultant impact throwing Coleman "about 25 feet [and] knocking [him] unconscious." (*Id.*). Coleman further alleges that, while he was on the ground, "injured, unable to move, and semi-conscious," Ofc. Joyce, Ofc. Vecchino, and Ofc. Bataille "viciously attacked" him, landing kicks and various blows. (*Id.* ¶ 26). Coleman avers that Ofc. Rodriguez and two John Doe officers then verbally abused him and handcuffed him. (*Id.* ¶ 27). Coleman further alleges that, despite his request for medical attention, all Defendants failed to provide him with medical care or take him to a hospital. (*Id.* ¶¶ 27-29). Finally, Coleman alleges that the search of the motel room was illegal. (*Id.* ¶ 28).

Based on these allegations, the Complaint asserts numerous claims against all Defendants, which claims often overlap and are far from a model in clarity. Specifically, the Complaint asserts: (i) that "the intentional beatings of plaintiff" violated his rights under the Fourth, Fifth, and Eighth Amendments, as well as his "statutory civil rights," (ECF No. 1 ¶¶ 37–40, 43–44); (ii) that it was "the policy and practice" of the City to "authorize certain officers . . . to cover up the use of excessive force despite the lack of probable cause to arrest or any actual

violation justifying his arrest" and "to authorize certain officers . . . to deny and prevent prompt medical treatment of injured persons," and that Defendants failed to train, direct, supervise, or control officers to prevent violation of Coleman's rights, (*id.* ¶¶ 45–50); (iii) that Defendants conspired to violate Coleman's civil rights, (*id.* ¶¶ 51–52); (iv) a claim for assault and battery, (*id.* ¶¶ 53–57); (v) a claim for intentional infliction of emotional distress, (*id.* ¶¶ 58–61); (vi) an excessive force claim, (*id.* ¶¶ 67–75); (vii) a claim for false arrest and false imprisonment, as well as for malicious abuse of process, (*id.* ¶¶ 81–84); (viii) a claim for inadequate medical treatment, (*id.* ¶¶ 85–87); (ix) a claim against Ofc. Rodriguez and two Doe Defendants for failure to intervene to prevent Ofc. Bataille and Ofc. Joyce from using excessive force, (*id.* ¶¶ 41–42); and (x) claims solely against the City claiming liability under the doctrine of *respondeat superior*, based on the City's policies and practices, as well as the City's alleged failure to train, supervise, and control its police officers. (*Id.* ¶¶ 62–66, 76-80). As relief, Coleman seeks compensatory, exemplary, and punitive damages[3], plus attorneys' fees and costs. (*Id.* at p. 29).

Upon an initial screening of the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), this Court dismissed with prejudice Coleman's *respondeat superior* claims. (Mem. & Order, ECF No. 3, ¶ 7). The Court also dismissed without prejudice all claims that Coleman asserted against Mayor Adam Schneider and Police Director Jason Roebuck. (*Id.* ¶¶ 8–9). The Court further dismissed without prejudice Coleman's claims for abuse of process, malicious prosecution, and intentional infliction of emotional distress. (*Id.* ¶¶ 10–11). The Court permitted the remaining claims to proceed. (*See id.*).

---

[3] The Court notes that exemplary damages are synonymous with punitive damages. *See* "Damages, Punitive," *Black's Law Dictionary* (10th ed. 2014) (noting that punitive damages are "[a]lso termed *exemplary damages*").

5

Defendants answered the Complaint on May 24, 2016. (Ans., ECF No. 9) On August 16, 2016, Defendants filed a motion that was labeled as a motion to dismiss, but included a statement of undisputed material facts and sought summary judgment. (Mot., ECF No. 11). As a result of these inconsistencies, the Court denied that motion without prejudice and issued an order for Coleman to show cause why the case should not be dismissed for his failure to prosecute, under Local Civil Rule 41.1. (Mem. & Order, ECF No. 16). Shortly thereafter, Coleman submitted two letters indicating that he "intends to proceed with this action." (ECF Nos. 17-18).

On August 16, 2017, the Magistrate Judge in this case issued an order requiring the completion of all discovery by December 15, 2017, the filing of any dispositive motions no later than January 12, 2018, and the submission of pretrial memoranda in early February 2018. (Order, ECF No. 22). Coleman made a somewhat ambiguous two-page filing on January 11, 2018, which consisted of a cover letter stating, "Please find enclosed plaintiff's pretrial memorandum submission . . . dispositive motion," and a proposed order that contained no specific request for relief. (ECF No. 25). The Court never received a pretrial memorandum from Coleman. On January 12, 2018, Defendants filed the instant motion for summary judgment as to all remaining claims.[4] (ECF No. 24). Upon the filing of Defendants' motion, the Clerk of the Court mailed a copy of the motion to Coleman at South Woods State Prison. Coleman has not filed an opposition to the motion, or otherwise communicated in any manner with the Court since the filing of the same. Accordingly, Defendants' motion is deemed unopposed.

## II.     DISCUSSION

### A.     Standard of Review

---

[4] Alternatively, Defendants seek dismissal of the Complaint as a sanction for Coleman's failure to provide discovery.

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322. If the movant satisfies its initial burden, the nonmoving party cannot rest upon mere allegations in the pleadings to withstand summary judgment; rather, the nonmoving party "must counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson*, 79 F.3d at 1366. Specifically, the nonmoving party "must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp*, 271 F.3d 560, 564 (3d Cir. 2001); *see Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each

and every essential element of his case.").  Thus, "a mere 'scintilla of evidence' in the nonmovant's favor" is insufficient to create a genuine issue of fact."  *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016) (citation omitted); *see Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 45 (3d Cir. 2017) ("There is a genuine dispute of material fact if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party.").  Ultimately, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party.  *See Brooks v. Kyler*, 204 F.3d 102, 105 n. 5 (3d Cir. 2000).

Under Local Civil Rule 56.1, the party moving for summary judgment must furnish a statement of material facts not in dispute.  L. Civ. R. 56.1(a).  Upon the filing of such a statement, the opposing party must "furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion."  *Id.*  Significantly, "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."  *Id.*  Thus, here, because Coleman has failed to dispute any of the facts set forth in Defendants' Statement, those facts are deemed undisputed for the purposes of the instant motion.  Nonetheless, because a motion for summary judgment cannot be granted merely because it goes unopposed, *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990), the Court turns to whether, in light of these undisputed facts, summary judgment is warranted as a matter of law.  *See Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003).

### B.    Coleman's § 1983 Claims

As noted, in the Complaint, Plaintiff asserts a variety of constitutional claims under 42 U.S.C. § 1983. Section 1983 provides a cause of action for violations of constitutional rights committed by a person acting under color of state law. Specifically, § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, the Complaint explicitly asserts § 1983 claims for false arrest, false imprisonment, excessive force, failure to intervene, inadequate medical care, conspiracy to violate civil rights, and for supervisory liability against the City and certain of the named Defendants, by way of deficient policies and because these Defendants allegedly failed to adequately train and supervise police officers. (*See* ECF No. 1). Additionally, although the Complaint does not include a separate claim for a warrantless search and seizure, Coleman does allege that the search of the hotel room was unlawful, and thus, as Coleman proceeds *pro se*, the Court will liberally construe the Complaint as asserting such a claim. (*See* ECF No. 1 at 1 & ¶ 28). The Court will address each of these claims, in turn.[5]

---

[5] To the extent that Coleman intends to raise claims under the New Jersey Civil Rights Act ("NJCRA"), those claims mirror his § 1983 claims, and thus, the Court's analysis of Coleman's § 1983 claims applies equally to his NJCRA claims. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011); *see also Armstrong v. Sherman*, Civ. No. 09–716, 2010 WL 2483911, at *5 (D.N.J. Jun. 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983."); *Chapman v. New Jersey*, Civ. No. 08–4130 (AET), 2009 WL 2634888, at *3

## 1. *False Arrest and False Imprisonment*

The Fourth Amendment "requires that arrests be supported by probable cause." *Smith v. Angelo*, No. 17-2389, 2018 WL 1003368, at *1 (3d Cir. Feb. 21, 2018). To prevail on a claim for false arrest under the Fourth Amendment, a plaintiff must establish: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). Similarly, to prevail on a claim for false imprisonment, a plaintiff must show: (1) that he or she "was detained; and (2) that the detention was unlawful." *Id.* at 682-83. Here, it is undisputed that Coleman was seized[6] in the course of the arrest, and thus, Coleman's false arrest and false imprisonment claims both turn on whether the arrest was made without probable cause. *See White v. Andrusiak*, 655 F. App'x 87, 90 (3d Cir. 2016) ("To make out either a false arrest or false imprisonment claim, [the plaintiff] needed to demonstrate that his arrest was unsupported by probable cause.").

"Probable cause exists 'whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.'" *Mikhaeil v. Santos*, 646 F. App'x 158, 162–63 (3d Cir. 2016) (citation omitted). The probable-cause inquiry is an objective one: "an arresting officer's state of mind (except for the facts that he knows) is irrelevant" and probable cause for an arrest will be found "as long as the circumstances, viewed

---

(D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart . . . .").

[6] The Fourth Amendment of the United States Constitution guarantees a right to be free from unreasonable seizures. U.S. CONST. amend. IV. A seizure occurs when a government official restrains a person's freedom of movement, such that the person is deprived of his or her free will to leave. *Brendlin v. California*, 551 U.S. 249, 254 (2007). In general, a seizure is only permissible where it is supported by probable cause that the subject individual has committed a crime. *Bailey v. United States*, 568 U.S. 186, 192 (2013).

objectively, justify that action." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (internal quotation marks omitted).

Here, Defendants argue that summary judgment is appropriate as to Coleman's claims for false arrest and false imprisonment, because probable cause existed to arrest him for the crimes of obstructing the administration of law and resisting arrest. (Br. in Supp., ECF No. 24-3, at 2–3). In support of that argument, Defendants cite, *inter alia*, to the following undisputed facts:

- Ofc. Bataille witnessed the vehicle in which Coleman was a passenger fail to stop at a traffic light, and attempted to execute a vehicle stop.

- After the vehicle pulled into the Ocean Court Motel, Ribeiro and Coleman exited the vehicle.

- Ofc. Bataille ordered Ribeiro and Coleman to return to the vehicle.

- Coleman initially returned and opened the car door, but then shut it and quickly walked away.

- Coleman failed to comply with Ofc. Bataille's instructions to return and sit in the vehicle.

- Ofc. Bataille informed Coleman that he was under arrest.

- Coleman then began to run away, with Ofc. Bataille in pursuit.

- While fleeing, Coleman removed items from his pockets and threw them on the ground.

- Ofc. Joyce pulled his patrol car in front of Coleman, exited the vehicle, and tackled Coleman to the ground.

- Ofc. Joyce and Ofc. Vecchino then subdued Coleman.

- Despite the officers' instructions to stop resisting, Coleman attempted to pull his hands away from the officers.

- Eventually, the officers restrained Coleman in handcuffs.

- Ofc. Bataille retrieved the items that he saw Coleman throw out of his pockets, comprising a cellular telephone, a cellular-telephone battery, and a driver's license.

- In the same area, Ofc. Rodriguez found two plastics bags suspected to contain cocaine and a pipe for smoking cocaine.

- As Coleman was "processed by Officer Joyce," Ofc. Joyce found, among other items, three large plastic bags suspected to contain cocaine and nine wax envelopes suspected to contain heroin.

(ECF No. 24-2 ¶¶ 1–15).

Based on these undisputed facts, it is beyond dispute that probable cause existed to arrest Coleman for obstructing the administration of law and for resisting arrest. Under N.J.S.A. § 2C:29-1, a person commits the offense of obstruction of the administration of law where the person "attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle." N.J.S.A. § 2C:29-1(a). Similarly, under N.J.S.A. § 2C:29-2, a person commits the offense of resisting arrest where the person "purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest," and the offense level is enhanced if the resistance takes the form of flight, physical force, or violence.[7] *See* N.J.S.A. 2C:29-2(a).

Here, Defendants had probable cause to arrest Coleman at the time of the seizure, because a reasonably objective officer under these circumstances would believe that Coleman committed the crimes of obstruction of the administration of law and resisting arrest when he: (i) fled from the scene of a lawful traffic stop, despite Ofc. Bataille's directions to return to the vehicle; (ii) continued to flee, despite Ofc. Bataille and Ofc. Joyce's warnings that Coleman was under arrest, and pursuit of Coleman; and (iii) resisted the officers' attempts to restrain him with handcuffs. Accordingly, summary judgment is granted as to Coleman's claims for false arrest and false imprisonment.

---

[7] The Court notes that under the resisting-arrest statute "[i]t is not a defense to a prosecution under this subsection that the law enforcement officer was acting unlawfully in making the arrest, provided he was acting under color of his official authority and provided the law enforcement officer announces his intention to arrest prior to the resistance." N.J.S.A. § 2C:29-2(a); *see also State v. Mulvihill*, 57 N.J. 151, 155–156 (1970).

2. *Excessive Force*

The Supreme Court has held that all claims alleging excessive force in the context of an arrest, investigatory stop, or seizure must be "analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004). The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST. amend. IV. To prevail on a Fourth Amendment excessive force claim, "a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *Lamont v. New Jersey*, 637 F.3d 177, 182–83 (3d Cir. 2011). A seizure occurs "[w]henever an officer restrains the freedom of a person to walk away . . . ." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Here, because there is no dispute that a seizure occurred when the officers arrested Coleman, the critical question for the Court is whether, in light of the circumstances confronting them, Defendants employed an unreasonable amount of force in arresting Coleman.

To determine reasonableness in excessive force cases, courts within the Third Circuit ask "whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 397). In assessing objective reasonableness, courts balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). While the objective reasonableness inquiry is individualized and fact specific, the Supreme Court has set forth three factors to guide the Court's inquiry: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety

of the officers or others"; and (3) whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see Garner*, 471 U.S. at 8-9. "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). While some courts consider "only the facts and circumstances at the precise moment that excessive force is applied," courts within the Third Circuit take into account "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force." *Rivas*, 365 F.3d at 198.

The objective reasonableness of a particular use of force is evaluated from "the perspective of the officer at the time of the incident and not with the benefit of hindsight." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015); *see Graham*, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). Thus, within the context of an excessive force claim, the "standard of reasonableness at the moment applies: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Rather, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

Here, the undisputed facts relevant to Coleman's excessive-force claim are as follows:

- Coleman fled from the vehicle, despite Ofc. Bataille's instructions to return and admonitions that Coleman was under arrest.

- Ofc. Joyce pulled his vehicle into Coleman's path, resulting in impact with Coleman.

- Coleman "came in contact with Officer Joyce's car, placing his hands on the hood, spinning around then running in a different direction."

- Ofc. Joyce exited his vehicle and tackled Coleman.

- While Ofc. Joyce and Ofc. Vecchino attempted to restrain Coleman, Coleman tried to pull his hands away and the officers told him to stop resisting.

- Ofc. Joyce struck Coleman twice on the ribcage.[8]

- Coleman was ultimately handcuffed and arrested.

(ECF No. 24-2 ¶¶ 5–10).

Considering these facts, the Court does finds that Coleman has failed to meet his burden of establishing that a genuine dispute of material fact exists regarding whether the force employed by the arresting officers was excessive. Although Coleman's crime was not particularly severe, Coleman actively sought to evade arrest by flight. Additionally, the force that Ofc. Joyce used to apprehend Coleman was correspondingly minor, consisting primarily of pulling his vehicle into Coleman's path and subsequently tackling Coleman. These actions appear calculated to halt his flight without causing unnecessary harm. When Coleman resisted being handcuffed, the officers used a reasonable amount of force to secure his hands. Although Ofc. Joyce admits striking Coleman twice on the ribcage, this was in the context of trying to extract Coleman's hands from beneath him, and was reasonable in light of the threat that Coleman may be reaching for a weapon. (*See* ECF No. 24-2 at ECF p. 9). Moreover, the

---

[8] Ofc. Joyce's report indicates that he struck Coleman because he tucked his hands beneath his body and that Joyce feared that Coleman was attempting to pull out a weapon. (ECF No. 24-2 at ECF p. 9).

relative reasonableness of the force employed is bolstered by the fact that Coleman has never alleged, nor introduced evidence of, any specific resulting injuries. *See Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) ("The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." (internal quotation marks and brackets omitted)). Consequently, summary judgment is granted on Coleman's excessive force claim.

### 3. *Failure to Intervene*

A police officer has a duty to "take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). A police officer is liable for failure to intervene under § 1983 if the plaintiff demonstrates that: (1) the officer had reason to know that excessive force was being used; and (2) the officer had a realistic opportunity to intervene. *See id.* at 650. Thus, where a plaintiff is unable to establish a claim for excessive force, he cannot establish a claim for failure to intervene. *Lora-Pena v. Denney*, 760 F. Supp. 2d 458, 468 (D. Del. 2011) ("[B]y definition, if there was no excessive force then there can be no failure to intervene.") (quoting *Abdullahi v. City of Madison*, 423 F.3d 763, 767–68 (7th Cir. 2005)).

Here, Coleman asserts his failure-to-intervene claim solely against Ofc. Rodriguez and two Doe Defendants, alleging that they failed to intervene when Ofc. Bataille and Ofc. Joyce employed excessive force in arresting Coleman. (ECF No. 1 ¶¶ 41–42.) As the Court has concluded that no reasonable juror could find that Coleman was subjected to excessive force, Coleman's failure to intervene claim necessarily fails. *See Lora-Pena*, 760 F. Supp. 2d at 468. Indeed, even if Coleman was subjected to excessive force, summary judgment would still be warranted with respect to the failure to intervene claim, because Coleman has not established

that Ofc. Rodriguez or the Doe Defendants had a realistic and reasonable opportunity to intervene. *See Smith*, 293 F.3d at 651. Accordingly, summary judgment is granted as to Coleman's failure to intervene claim.

### 4. *Inadequate Medical Care*

In the Complaint, Coleman vaguely alleges that he was "entitled to medical treatment" upon his "arrest and confinement," and that Defendants "deliberately and intentionally failed to promptly provide plaintiff with such medical treatment." (ECF No. 1 ¶ 86). From these allegations, its unclear whether Coleman's inadequate medical care claim stems from Defendants' actions before or after he was incarcerated. That distinction is relevant, because it determines whether the source of the plaintiff's entitlement to adequate medical care stems from the Eighth Amendment or the Fourteenth Amendment. Specifically, an incarcerated plaintiff may assert a § 1983 claim for violation of the Eighth Amendment where institutional staff have provided inadequate medical care. *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993); *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976); *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). In contrast, a § 1983 claim for inadequate medical care that is asserted by a pretrial detainee implicates the Due Process Clause of the Fourteenth Amendment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581–82 (3d Cir. 2003).

In any event, to prevail on a claim for inadequate medical care under § 1983, whether it is evaluated under the Eighth or Fourteenth Amendment, a plaintiff must make: "(1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson*, 850 F.3d at 534 (citation omitted); *see Gunter v. Twp. of Lumberton*, 535 F. App'x 144, 149 (3d Cir. 2013) ("Deprivation

of medical care to arrestees violates their Fourteenth Amendment right to due process if it constitutes deliberate indifference to medical needs."); *see also Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (holding that "the state of mind requirement for prisoners' failure to protect claims—'deliberate indifference'—applies also to pretrial detainees' claims."). With respect to the first prong of that analysis, deliberate indifference "is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" *Natale*, 318 F.3d at 582. Deliberate indifference thus requires proof that the defendant "knows of and disregards an excessive risk to [the plaintiff's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). For example, the Third Circuit has found deliberate indifference where the "'official (1) knows of a [plaintiff's] need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a [plaintiff] from receiving needed or recommended medical treatment.'" *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). Conversely, allegations of "[n]egligence and malpractice" are insufficient to state a claim for inadequate medical care. *Edwards*, 663 F. App'x at 137. With respect to the second prong of the analysis, the Third Circuit has stated that "a medical need is 'serious' for purposes of a denial of medical care claim if it is either 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Mattern v. City of Sea Isle*, 657 F. App'x 134, 139 (3d Cir. 2016) (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

Defendants argue that they are entitled to summary judgment on Coleman's inadequate medical care claim, because Coleman "has provided no evidence that he required immediate treatment, or that the Defendant Officers were aware of such at the time of his involvement with

the Plaintiff." (ECF No. 24-3 at 10). As the Court has already noted, at the summary judgment stage, Defendants are not required to "produce evidence showing the absence of a genuine issue of material fact"; rather, Defendants need only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Here, Defendants have met their summary judgment burden by showing that, despite the close of the discovery period, and despite the opportunity to submit evidence to the Court in opposition to this motion, Coleman has not produced or submitted any evidence supporting his claim for inadequate medical care, including facts showing that Defendants were deliberately indifferent or that Coleman had serious medical needs. *See Hakeem v. Salaam*, 260 F. App'x 432, 434–35 (3d Cir. 2008) ("Although Hakeem claims that his repeated complaints of throat pain went completely ignored, he cannot rest upon mere unsupported allegations when faced with a motion for summary judgment."). Indeed, Coleman has never alleged, much less introduced evidence of, any specific serious injury. (*See* ECF No. 1). Accordingly, because Coleman has failed to introduce any evidence supporting his claim for inadequate medical care, the Court finds that Defendants are entitled to summary judgment on that claim.

### 5. *Conspiracy*

In the Complaint, Coleman also alleges, without further elaboration, that Defendants "conspired to violate plaintiff's statutory civil rights in violation of 42 U.S.C. § 1983." (ECF No. 1. ¶ 52). Defendants move for summary judgment on Coleman's conspiracy claim, arguing that Coleman has failed to establish any facts in support of such a claim. (ECF No. 24-3 at 8–9). I agree.

To prevail on a § 1983 claim alleging a civil rights conspiracy, the plaintiff must show an agreement between multiple individuals to deprive the plaintiff of his or her constitutional rights.

*Korlewala v. Slobodian*, 712 F. App'x 148, 150 (3d Cir. 2017). "Like any agreement, this requires a 'meeting of the minds.'" *Id.* (quoting *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008)). Here, Coleman has not produced any evidence of concerted action between Defendants to violate Coleman's constitutional rights, nor any evidence that supports an inference of an agreement. Indeed, the only conspiracy-related allegation in the Complaint is the entirely conclusory assertion that Defendants "conspired to violate plaintiff's statutory civil rights." (ECF No. 1 ¶ 52). Because this Court is not required to accept that bald legal conclusion at the summary judgment stage, and because Coleman fails to establish any other facts showing an agreement between Defendants, summary judgment is warranted on Coleman's conspiracy claim.

      *6.*      *Municipal Liability and Failure to Train and Supervise*

      In Count Five of the Complaint, Coleman alleges that it was the policy and practice of the City to authorize certain City employees, including Defendants, to: (i) "cover up the use of excessive force despite the lack of probable cause to arrest or any actual violation justifying [the] arrest"; and (ii) to "deny and prevent prompt medical treatment of persons in the care and custody of [the] Long Branch Police Department, [and] to abuse verbally those detained persons who sought to assert these rights." (ECF No. 1 ¶¶ 46-48). Coleman further alleges that the City and Officers Bataille, Joyce, Vecchino, and Rodriguez refused to adequately "train, direct, supervise, or control [the] defendant officers so as to prevent the violation of [Coleman's] constitutional rights." (*Id.* at ¶ 49).

      Defendants argue that summary judgment is warranted with respect to Coleman's unlawful policy and failure to train or supervise claims, because: (i) Coleman has not proffered any evidence that the City maintained an unlawful policy or custom that led to the alleged

constitutional violations; and (ii) Coleman has not specified any failure to train, nor has he identified any history of rights violations that should have put the City on notice of the possibility of the alleged constitutional violations in this case.

"A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-95 (1978). Instead, a "plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Thomas*, 749 F.3d at 222; *Monell*, 436 U.S. at 690-91. Liability is imposed "when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one its employees." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991) (citation omitted). The Third Circuit has characterized the burden on a plaintiff seeking to establish municipal liability in a § 1983 claim as "quite high." *King v. Cty. of Gloucester*, 302 F. App'x 92, 99 (3d Cir. 2008). As the Supreme Court has explained:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

As a preliminary matter, because Coleman has failed to establish the constitutional violations asserted in connection with his municipal liability claim, – excessive force and inadequate medical care – Coleman cannot establish that the City was the "moving force" behind those alleged constitutional violations. *King*, 302 F. App'x at 99 ("Because appellants did not

establish a constitutional violation, they likewise did not establish that the Township was the 'moving force' behind a constitutional violation."). Stated differently, because this Court has already found that there is insufficient evidence to find that Coleman's underlying constitutional rights were violated, supervisory liability cannot be imposed against either the City or any of the named officers for their role in the same. For this reason alone, Coleman's claims against the City must be dismissed. Even if that were not the case, Coleman has failed to produce any evidence in support of his claim that the City or the relevant Defendants "established or enforced policies and practices directly causing the constitutional violation," – the use of excessive force or inadequate medical treatment – as required "to establish a claim against a policymaker under § 1983." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015). Accordingly, Coleman's claims seeking to hold the City liable for the alleged use of excessive force and the alleged inadequate medical care are dismissed.

Finally, with respect to Coleman's allegations regarding the City and the relevant officers' failure to properly train and supervise, the Third Circuit has explained that, where "the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A

"pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (citation omitted). In short, "for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter*, 181 F.3d at 357.

Here, Coleman has failed to adduce any evidence in support of his failure to train or supervise claim, including evidence that there was a pattern of similar constitutional violations by untrained employees, or that the City or relevant Defendant-officers were deliberately indifferent to a risk of constitutional violations that was the result of the failure to train or supervise. Absent evidence that the City or relevant Defendant-officers were on notice, or should have been on notice, that the course of training was deficient in some respect, they "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62. Indeed, to hold otherwise "would result in *de facto respondeat superior* liability on municipalities—a result [that the Supreme Court] rejected in *Monel.*" *City of Canton*, 489 U.S. at 392. Accordingly, summary judgment is granted as to Coleman's claims under *Monell* against the City and Coleman's failure to train or supervise claims against the City and Officers Bataille, Joyce, Vecchino, and Rodriguez.

7.    *Unlawful Search and Seizure*

While the Complaint does not include a separate count alleging that Defendants violated Coleman's Fourth Amendment rights by executing a warrantless search and seizure of the motel room, Coleman does allege that the search of the motel room was illegal. (ECF No. 1 ¶ 28). In

their motion for summary judgment, Defendants argue that the search of the motel room falls within the consent exception to the warrant requirement, because the motel's night manager gave consent to search the room. (ECF No. 24-3 at 6).

The Fourth Amendment to the United State Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend IV. The Fourth Amendment "protects people in their homes from unreasonable searches and seizures by permitting only a neutral and detached magistrate to review evidence and draw inferences to support the issuance of a search warrant." *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006). Relevant here, the prohibition against unreasonable searches and seizures "extends to guests staying in hotel rooms." *Id.*; see *Stoner v. State of Cal.*, 376 U.S. 483, 490 (1964) ("No less than a tenant of a house . . . a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures.") (internal citations omitted); *United States v. Dockery*, No. 17-1713, 2018 WL 3060090, at *2 (3d Cir. June 20, 2018) ("Under the Fourth Amendment, a hotel guest is entitled to the same expectation of privacy to his hotel room as one is to his own home.").

Warrantless searches and seizures inside a motel room "are presumptively unreasonable unless the occupants consent or probable cause *and* exigent circumstances exist to justify the intrusion." *Coles*, 437 F.3d at 365 (emphasis in original). Here, Defendants only argue that the search was justified under the consent exception to the warrant requirement, and thus, the Court will not analyze whether probable cause and exigent circumstances justified the search.

"While the Fourth Amendment prohibits unreasonable searches and seizures, [c]onsent is an exception to the requirements of both a warrant and probable cause." *United States v.*

*Murray*, 821 F.3d 386, 391 (3d Cir. 2016) (citations and internal quotation marks omitted).  The

Fourth Amendment "recognizes a valid warrantless entry and search of premises when police

obtain the voluntary consent of an occupant who shares, or is reasonably believed to share,

authority over the area in common with a co-occupant who later objects to the use of evidence so

obtained."  *Georgia v. Randolph*, 547 U.S. 103, 106 (2006); *see United States v. Matlock*, 415

U.S. 164, 170 (1974) ("[T]he consent of one who possesses common authority over premises or

effects is valid as against the absent, nonconsenting person with whom that authority is shared.").

"Common authority" is "defined as 'mutual use of the property by persons generally having joint

access or control for most purposes.'"  *Murray*, 821 F.3d at 391 (citation omitted).

Contrary to Defendants' argument, here, a dispute of fact exists regarding whether the

motel's night manager could provide valid consent for the police offers to search Coleman's

motel room.  To that end, it is well established that a warrantless search of a motel room cannot

rest upon the consent of motel management, absent an indication that the individual giving

consent has been authorized by the occupant to permit the police to search the room.  *Stoner*, 376

U.S. at 488–90; *see Randolph*, 547 U.S. at 112 ("[A] hotel guest customarily has no reason to

expect the manager to allow anyone but his own employees into his room."); *United States v.*

*Bass*, 41 F. App'x 735, 737 (6th Cir. 2002) ("The hotel management had no authority to subvert

Bass's exclusive right to consent to the search of his hotel room in the absence of any evidence

that the hotel management had decided to evict him at the time of the search."); *see also*

*Dockery*, 2018 WL 3060090 at *2 (noting that an occupant's has a reasonable expectation of

privacy in a hotel room until he or she checks out of the room).  Accordingly, because a genuine

dispute of material fact exists regarding whether Defendants received valid consent to search the

motel room, summary judgment cannot be granted on Coleman's warrantless search and seizure claim.[9]

**B.  Coleman's Tort Claims**

In Counts Seven, Eight, Thirteen, Fourteen, Fifteen, Sixteen, and Seventeen of the Complaint, Coleman asserts various tort claims under state law.  Defendants argue that summary judgment is warranted with respect to these claims, because Coleman failed to file a Notice of Tort Claim, as required under § 59:8-8 of the New Jersey Tort Claims Act ("TCA").

The TCA bars tort claims against public entities or public employees if a timely notice of claim is not filed.  *See* N.J.S.A. § 59:8-3 through -9; *Ben Elazar v. Macreitta Cleaners, Inc.*, 230 N.J. 123, 133 (2017); *see also Lassoff v. New Jersey*, 414 F. Supp. 2d 483, 489–90 (D.N.J. 2006).  While a notice of claim typically must be filed within 90 days of the claim's accrual, in extraordinary circumstances, the time to file a notice of claim may be extended up to one year. N.J.S.A. 59:8-8 through -9.  "The claimant bears the burden of proving that the claim was filed with the appropriate public entity."  *Rolax v. Whitman*, 175 F. Supp. 2d 720, 730 (D.N.J. 2001), *aff'd* 53 F. App'x 635 (3d Cir. 2002); *see also Bradley v. Atl. City. Bd. of Ed.*, 736 F. Supp. 2d 891, 901 (D.N.J. 2010).  Here, there is no evidence before the Court that Coleman ever filed a notice of claim in compliance with the TCA.  Indeed, Coleman does not even include such an allegation in the Complaint.  Accordingly, summary judgment is granted on this basis, and Coleman's tort claims are dismissed.

**C.  Punitive Damages**

---

[9] To the event that this case proceeds, Defendants' motion for summary judgment on the illegal search claim is denied without prejudice, and thus, Defendants may submit a subsequent summary judgment motion arguing that the search was permissible under an exception to the warrant requirement, including a motion supported by additional facts showing that the search was conducted with valid consent.

Defendants argue that summary judgment is appropriate as to Coleman's demands for punitive damages from the City and from the other Defendants in their official capacities, because punitive damages are not available in § 1983 claims against a municipality or public employees. Indeed, it is well established that punitive damages are not available on § 1983 claim against a municipality. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259–71 (1981); *see also Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011). Similarly, because official capacity claims against public employees are treated as claims against the municipality itself, punitive damages cannot be recovered from public employees in their official capacities. *See Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). The TCA also bars recovery of punitive damages from a public entity. N.J.S.A. § 59:9-2(c). Accordingly, the Court strikes Coleman's request for punitive damages.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART, as follows: (i) summary judgment is granted as to Coleman's claims for false arrest, false imprisonment, excessive force, failure to intervene, deliberate indifference to medical needs, conspiracy, and supervisory liability, as to his tort claims, and as to his request for punitive damages, and these claims are dismissed with prejudice; and (ii) summary judgment is denied as to Coleman's claim for a warrantless search and seizure. Accordingly, Coleman's Fourth Amendment claim challenging the search of the motel room, and seizure of items therefrom, is the sole remaining claim in this action.

Nonetheless, the Court notes that Coleman never opposed Defendants' motion, was delinquent in participating in discovery, and failed to comply with the Magistrate Judge's order to submit a pretrial memorandum. Accordingly, this proceeding shall be administratively

terminated, and Coleman shall, within 30 days of the receipt of this Opinion and Order, show cause, under the factors enumerated by the Third Circuit in *Poulis v. State Farm Fire and Casualty Company*, 747 F.2d 863 (3d Cir. 1984), why his Complaint should not be dismissed with prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b) and Local Civil Rule 41.1. Coleman must submit a pretrial memorandum in conjunction with his response to this Order to Show Cause. An appropriate Order follows.

Dated: August 22, 2018                                    /s/ Freda L. Wolfson
                                                          Hon. Freda L. Wolfson
                                                          United States District Judge